The final case for today is United States v. Harbin, Case No. 25-1015. This is Remus. You may proceed. May it please the Court, Counsel. My name is Colleen Ramay, and I'm with the Federal Defender's Office here on behalf of Defendant Appellant Erik Harbin. The District Court in this case committed procedural error at sentencing when it relied on retributive considerations in imposing a sentence on the revocation of Mr. Harbin's supervised release. It was clear in the approximately three pages of the transcript where the sentence was announced and imposed that the Court characterized supervised release as a grace extended to Mr. Harbin, explicitly called it an alternative to a prison sentence. That is simply inaccurate, as we've demonstrated in the briefing and as explained in Asteris. So that is inaccurate both under the law and under the facts of this case. It's clear in this case that Mr. Harbin originally was sentenced to almost a statutory maximum sentence on the underlying offense. He had 117 months out of a maximum possible of 120. He also got the statutory maximum sentence of supervised release imposed. There was no grace afforded to him, and to characterize it as a grace misconstrues the purposes of supervised release. The Court also explicitly commented on the seriousness of his underlying offense and said, well, while you were punished for that, this is something that we have to consider, and this frames our whole conversation on revocation. So while pre-Asteris, and no fault of the District Court, pre-Asteris, this Court had said, the Court could consider the retributive factors in 3553A2A as long as it also considered other factors. Asteris made it clear that that is not acceptable. So in reading the transcript, I believed it was clear. I know the government disagrees, but it is clear that that was at least some of the consideration of the District Court. It's the underlying offense. It's the underlying offense, and to the extent to which, I mean, I understand that Asteris said, we are only deciding whether you can consider the seriousness and retribution for the underlying offense, which I would argue characterizing it as a grace absolutely does. It also really focused on the seriousness of the conduct, and the seriousness of the conduct implies retribution for the violation conduct as well. Ms. Ramey, one of the things that the District Court can consider is nature and circumstances of the offense still, right? Yes. And I know there's some overlap, but it seems like perhaps the nature and circumstances of the offense deals with kind of what the offense conduct was for. You talk about the use of grace. On page 134 of the transcript, the District Court says, the reality is that you did breach the court's trust and the grace that was afforded to you by way of supervision, particularly given the nature of your violations back to your original offense. Someone is continuing to use, possess cocaine, a snooze drug. Well, that's just a slide at that point, Mr. Harbin. One could read that to mean that what the District Court, when the District Court talked about grace, it meant that in the context of the trust that the court placed upon Mr. Harbin, that he would abide by his conditions to provide release and that he would rehabilitate, that the court was giving him a break because it trusted that he would turn the corner and that here we are later on and he hasn't turned the corner, he just slid back. Why isn't that a permissive kind of rationale for the court to use? Because we've talked about how in revocations, one of the permissible considerations is that the defendant breached the trust of the court. And here, the court demonstrated that trust by giving him a break at sentencing, or at least as articulated by the sentencing court. So why can't the court consider the sentence in that context? Your Honor, part of the benefit of going last today was that I had a long time to sit here and think about my case. And one of the things that I was thinking about, and because I certainly appreciate the nuance here, this is a difficult thing that the Supreme Court has asked District Courts to do, and I appreciate that. So the best analogy that I could come up with was, I'm a parent of teenagers now. Our condolences. Thank you. I appreciate it. But it's sort of the difference between saying, I left for the evening, and I left you home alone because I trust you. And you threw a party, and I'm going to punish you because you breached my trust. Versus, you were grounded for a prior, you were grounded because you threw a party when you breached my trust. And then you begged me to say, can I go out with my friends this one night because this is really important? And I relented, and I gave you grace from, I gave you some sort of reprieve from your prior punishment. And then you breached my trust again. And so then, when I'm thinking about how I'm going to sentence that second breach of trust, I am imputing my frustration and anger and need to punish the first breach of trust. Does that make some sense? Let me give you this typo. I don't know. Okay. It's been a while since I've been a parent of teenagers, so I'll try my best. So let's say your teenager breaks curfew. And so you tell the teen, you know what, I should ground you for a week. Sure. But, you know, I'm only going to ground you for two days because I think you can do better. Right. And so I'm going to give you a break. Yeah. But the next time you do this, I'm going to come down hard on you. Right. Right? Why isn't that what's happening here? So in other words, the district court is saying, and why isn't that permissible? Because that's what, and the second time your teenager breaches your trust and misses curfew, then you say, well, you know, I trusted you. I gave you that break because I trusted you. You breached my trust. You slid back. So now I'm going to punish you. I'm going to give you that week. Right. And why isn't that permissible? Because Estera says it's not. Because Estera said you can't, well, first of all, that's not what happened here. He got almost a statutory maximum sentence on both components. So to the extent to which the court, you know, to the extent to which Estera leaves room for that, I think that that is not applicable to this case. But more broadly, that's retributive for that first violation of trust. That is saying I am compounding, I'm not focusing on simply the violation of trust that you have done here. And I understand that it feels like we should be able to do that. It feels like that is a normal human reaction. I mean, it seems forward-looking, right? It seems that my scenario seems like you're not focusing on what happened before, but you're focusing on the most recent violation, that breach of trust. Isn't that what Estera tells us to do is don't look, don't be back-looking, but look forward to that violation of supervised release. That's what you're really focusing on. But in your hypothetical, and maybe I misunderstood, but I believe that the punishment was increased because of the prior leniency shown. And that's the problem. And that's the problem. That is backward-looking. But aren't we parsing the record here in a way that Estera actually kind of predicted? And if I was reading it right, kind of said, well, that's what the plain error review is for. You need to really make this specific objection. Now, your client decided not to have ABLE representation below. How do we square whether this is plain error or the fact that your client was pro se? But it seems to me in a way we're doing what Estera has predicted and had a solution for. Yes, Your Honor. The case law in this court is very clear. And the court has said over and over that when an issue arises in the pronouncement of sentence, in order to establish de novo review, you do not have to object under Rule 51A. So while I understand that the Supreme Court invoked 52B and talked about plain error, this kind of error could arise earlier in a sentencing and when a court is talking about the considerations and asking questions and things like that. In certain circumstances, there may be notice beforehand. There was not notice here, so he had no prior notice. And so the rules governing exception versus objection should apply equally to an Estera's error like they would to a Tapia error or to any other error that would arise in pronouncement of sentence. And I know I am over my time, but just briefly I'd like to say even if we apply plain error, we still prevail because there is an assumption that it is clear from the record that the court did consider these backward-looking retributive factors. There is an assumption that any consideration of that prejudices him. And the government hasn't even offered a reason that the court should exercise its discretion under the fourth prong of plain error. Thank you. Thank you, counsel. Mr. Temkin. May it please the court. Good afternoon, your honors. Eli Temkin for the United States. This court should affirm Mr. Harbin's revocation sentence under any standard of review. And if I may, I'll start by addressing the standard of review. My colleague correctly pointed out that the Supreme Court in Esteras has given district courts a difficult task. Esteras recognized that, but it addressed that point, the workability point, by saying that, sure, in that situation, the defendant has the obligation to point out the purported error to the district court, and that gives the district court the chance to clarify its thinking. On the spot, the defendant can know, was the district court relying on proper considerations in deciding my sentence, or was the district court going out of bounds? That cleared up the workability error, and it directs appellate courts on how to approach this also when the defendant fails to raise it, and the appellate court otherwise would be tasked with going back and reconstructing what was going through the district court's mind. District courts of sentencing say a number of different things. They aren't just going through a checklist. They're addressing the defendant personally. They are addressing any victims or families that might be there. District courts are going to say a number of different things, and that's encouraged. It's always going to be possible to look back after the fact and to pull comments out in isolation. If the defendant thinks there is an error, the defendant can object, as Esteras set out. Beyond that, Esteras is the Supreme Court's considered view. The issue is front and center in Esteras' workability question. The government raised the point in its brief. The defendant addressed the point in its reply brief, saying that plain error review is the answer, essentially. At oral argument, it came up, Justice Sotomayor, to quote from page 50 of the transcript, she asked, what is the workability problem? The district court says something wrong. You have to object. Justice Kavanaugh, later in the argument, essentially asking the government how it wanted to lose, given that it was going that direction. Justice Kavanaugh asked, if it's not objected to, it's not plain error. He was asking the government if it wanted the court to take that rule, which the court ultimately did, in the opinion. Other circuits to reach the standard of review question, since Esteras had been unanimous in applying the plain error review standard. As to the Stewart case from this court, post-Esteras, that addresses the standard of review point in a footnote, certainly Stewart points the opposite direction. But it doesn't settle the question for two reasons. First of all, Stewart, the parties did not address the point in Stewart. Stewart was briefed and argued before Esteras, and as the Stewart court noted, the parties agreed on this. The government conceded before Esteras that the NOVA review applied under this court's pre-Esteras precedent. Esteras obviously changed that. The second issue, as to Stewart, is that Stewart just can't be reconciled with Esteras. So if Stewart is in play, we disagree. If Stewart is still in play, what would be the standard of review? If this court's going to follow the Stewart footnote, then it would be de novo review. The Stewart footnote can't be reconciled with Esteras on this point. Esteras doesn't just say what happens when the defendant fails to object. Esteras says that the defendant needs to object, and that when the defendant fails to do so, review is under Rule 52B, only for plain error. It makes particular sense to follow the Supreme Court's directions here, because this is a question about how to interpret and apply the federal rules of criminal procedure, which, of course, the Supreme Court promulgates. So the Supreme Court is saying how to apply its own rules. This is exactly the situation that the Supreme Court was talking about in Esteras, where, again, the defendant can get clarity on the spot, and appellate courts aren't going to need to go back and try to reconstruct what was in the district court's mind. I'll move now to the actual facts of this case, unless the court has additional questions. In this case, the district court sentenced Mr. Harbin for permissible reasons. It was not to punish him for his 2015 crime. And, again, that's the right conclusion, whether reviewed for plain error or de novo. An appeal of the court is to consider the district court's sentencing remarks as a whole, and not just isolated excerpts from those remarks. The district court here properly applied the breach of trust framework throughout its comments. Mr. Harbin violated the court's trust through his repeated supervised release violations, and the district court voiced its concern that Mr. Harbin was sliding back into his old pattern of using drugs and committing crimes. That triggered the district court's concerns for deterrence and protecting the public. To the extent the district court mentioned the underlying offense from 2015, it was towards those ends which are permissible of, again, deterring Mr. Harbin and protecting the public. These are forward-looking considerations, and they aren't problematic under Asteris. To the extent the district court mentioned the 2015 offense, it said it didn't need to walk through the details of that offense, and Mr. Harbin had already been sentenced for that. That's at page 121 of the hearing transcript, page 22 of the appendix. The district court wasn't sentencing him to punish him. It wasn't imposing the revocation sentence to punish him for the 2015 offense. The idea of grace that the district court mentioned, judgely I believe you correctly identified that the district court was talking about supervised release as a grace, as a chance to get back on your feet, to reintegrate into society after a prison term. That's, again, consistent with this court's precedent addressing the breach of trust framework, and it's also consistent with the Supreme Court's characterization of supervised release as an alternative to a prison term and a chance for rehabilitation. The district court did mention seriousness a few times. Mostly that was getting to the violation conduct, and considering seriousness as to the violation conduct is in bounds. Asteris explicitly says it's not issuing a decision on that point. To any extent, the district court mentioned seriousness about the 2015 offense. It was saying that historically, but it wasn't relying on that in deciding the sentence. Again, the district court said it wasn't going to go into detail. It had already sentenced Mr. Harbin for that underlying offense. To any extent, the 2015 facts factored in. That was to further the district court's forward-looking concerns for Mr. Harbin. All that said, there was no error here, let alone any plain error. Unless the court has any questions, the government asks the court to affirm the revocation sentence. Thank you. Thank you, Mr. Tompkins. Ms. Romay, I'll give you another minute. Your Honors, the court let off, essentially, at the very beginning of its discussion of the sentence by explaining that it talked about the sentence that Mr. Harbin had originally received. It did say, as Mr. Tompkins said, you've already been sentenced for that. But then it says, the court said, I think it's always important to recall any time the court gets to a revocation that this is still very much rooted in the grace that you were afforded as part of that original offense. Immediately after calling his offense serious. And I understand that there are other considerations that the court had when pronouncing sentence, but I don't know what else to construe from this than that it was a consideration. That the retributive factors of 3553A2A were part of the mix of considerations that the court considered. And Asteris says, does not say that, oh, if it's just a part of the mix, then it's not going to meet plain error. Asteris says, even under plain error, a court's order revoking supervised release and re-imprisonment will be affirmed unless it is clear or obvious the district court actually relied on 3553A2A because it did so either expressly or by unmistakable implication. This is express and or unmistakable implication that 3553A2A was part of the mix of things that the court considered, which we know under Asteris is wrong. I stand by my arguments on the standard of review, but I think under either standard of review, this should be remanded. Thank you. Thank you, counsel. The case will be taken under advisement. And with that, the court will be in recess.